Raynell Carmichael, D-25366
San Quentin State Prison-2N-1-L
San quentin, CA. 94974

In Propria Persona

IN THE UNITED STATED DISTRICT COURT

FOR THE NORTHEN DISTRICT OF CALIFORNIA

Raynell Carmichael

    PLAINTIFF,

VS.

James E. Tilton, et al.,

    DEFENDANTS,

CV 07 5622 CW (PR)

MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR A TRO AND PRELIMINARY INJUNCTION

Statement of the Case

    This is a civil rights action broght under 42 U.S.C.§ 1983 by a prisoner incarcerated at San Quentin state Prison whose has a Metabolic Bone disease who is presently being denied appropriate adequate medical care that is a specific recommedation by an Endocrinologist Dr. Madrilejo MD. on April 26, 2007, to be seen by a Bone Metabolism Expert, another Endocrinologist Dr. O'connor, MD. on May 25, 2007, recommedation that I be seen by a Rheumatology specialist, and once again this request was repeated on August 24, 707 to be seen by an Rheumatology and a GI-Gastrointestinal consult, as of this date October 17, 2007, No such referral has occurred. The plaintiff seeks a temporary restraining order and a preliminary

1.

1  injunction to ensure that he receives proper medical care.
2
3  Statement of Facts
4
5      As stated in detail within the declaration submitted and attached
6  with this motion, The plaintiff was untreated and not diagnossis
7  for over 2½-plus years now partially known as an Metabolic Bone
8  Disease due to an Vitamin D-deficenay, Osteomalacia soft Bones,
9  Osteopenia Brittle Bones, Superimposed Osteoarthritis rampant
10 degeneration. Bone diseas Mottled Lesion infiltratived in Multiple
11 sites with in bones, Neck, Spine, Left shoulder & elbow, spreading
12 to right shoulder Elbow & Thumb. Hip, Pelvies , right Knee, left
13 knee & ankel, Dr. Michael Scott, was the First one to respond in
14 May 2006, to the H-high out of Range Elevated Alkaline Phosphatase,
15 to find out the cause at ane point it was leaning towards Multiple
16 Myeloma-Bone Cancer, over time and up to this in time plaintiff was
17 recommended by tow Endocrinologist , that I be seen by an Bone
18 Metabolism Expert on August 26, 2007, Dr. Madrilejo, MD. & Dr.O"connor
19 MD. May 25, 2007, & August 24, 2007, tthat I be seen by an
20 Rheumatogical specialist, and a GI-gastrointinl. The physician who
21 treated me directed the defendants at San Quentin. It has been a
22 total of up to 6-plus months and the defendants have not provided
23 plaintiff with any consultation with the qualified to asses the
24 true cause of the Elevated Alkaline phoshatase and treat my condition.
25 The plaintiff is experiencing continued pain, stiffness, muscles
26 cramps, and limited motion in siting down, stnading up from a chair,
27 getting in and out of bed even shifting around in bed from side to
28 side ETC., and walking with the aid of a cane, Morbility Impaired.

The defendants against whom relief is suought are, respectively, the prison Chief Medical Officer-Dr. Rene Kanan, MD.who is responsible for arranging specialized medical care that scheduler who is responsible for getting Inmates to their outside medical appointment,

## ARGUMENT

### POINT 1:

THE PLAINTIFF IS ENTITLED TO TEMPORARY RESTRAINING ORDER AND A PRELIMINARAY INJUNCTION

In determining whether a party is entitled to a temporary restraining order or a preliminary injunction, courts generally consider several factors; Whether the party will suffer irreparable injury, the "Balance of hardships" between the parties, the likelihood of success on the merits, and the public interest. Each of these factors favors the grant of this motion.

A. The plaintiff is threatened with irreparable harm.

The plaintiff alleges that he has been denied care for a serious medical need contrary to physician's instruction, such conduct by prison officials is a clear violation of the Eighth Amendment. Estelle V. Gamble, 429 U.S. 97, 105, 97 S.Ct. 285 (1976) (noting that "intentionally interfering with the treatment once prescribed" is a form of unlawful deliberate indifference); See also case cited in § C of this point.

1    As a matter of law, the continuing deprivation of constitutional
2 rights constitutes irreparable harm. The loss of constitutional
3 rights, even for short periods of time, constitutes irreparable
4 injury. Elrod V. Burns, 427 U.S. 347, 373, 96 S Ct. 2673 (1976).
5 This principle has been applied in prison litigation generally, see
6 Newson V. Norris, 88F. 2d 371, 378 ( 6th Cir. 1989); Mitchell V.
7 cuomo, 748 F.2d 804, 806 (2d Cir. 1984); Albro V. County of onondaga,
8 N.Y.,627 F. Supp.1280, 1287 (N.D.N.Y. 1986); Williams V. Lane,646
9 F. Supp.1379, 1409 (N.D.III.1989), aff'd 851 F.2d 867 (7th Cir. 1988),
10 Cert. denied, 109 S.Ct.879 (1989), and speciffically in prison medical
11 care cases. Phillips V. Michigan Dept. of corrections, 731 F. Supp.
12 792, 801 (W.D.Mich. 1990),aff'd, 932 F.2d 969 (6th Cir.1991).

14    In addition, the plaintiff is threatened with irreparable harm.
15 because of the nature of my Metabolic Bone disease, the all ready
16 motted lision shown in the whole body scan done at Novato Community
17 Hospital on July 7, 2006, that the disease as infiltrative to Multiple
18 sites possible Permanet damage irreversible damage has all ready
19 been done. If I don't receive proper treatment at the proper time,
20 I may Never be normal again.

22    B. The balance of harships favors the plaintiff

24    In deciding whether to grant TRO'S any preliminary injunction,
25 courts ask whether the suffering of the moving party if the motion
26 is denied will outweigh the suffering of the non-moving party if the
27 motion is granted. See,e.g., Mitchell V. Cuomo, 748 F. 2d 804, 808
28 (2d Cir. 1984) (holding that dangers posed by prison crowding out

4.

1  weighed state's financial and administrative concerns); Duran V.
2  Anaya, 642 F. Supp. 510, 527 (D.N.M.1986) (holding that prisoner's
3  interest in safety and medical care outweighted state's interest in
4  saving money by cutting staff).
5
6      In this case, the present suffering of the plaintiff and his
7  potential suffering if the damage all ready done is irreversible the
8  continue delays and denial will be enormous. The "suffering" the
9  denfendants will experience if the court grants the courts will
10 consist of taking the plaintiff to a suitable doctor and the carrying
11 out the doctor's orders---something that the denfendants do, and are
12 obligated to do, for members of the prison population on a daily
13 basis. the defendant's hardship amounts to more than business as
14 usual.
15
16     C. The plaintiff is likely to succed on the merits.
17
18     The plaintiff has a great liklihood of success on the merits.
19 what defendants have done--"intentionally interfering with [Medical]
20 treatment once prescribed"--was specifically singled out by the
21 supreme court as an example of unconstitutional "deliberate
22 indifference" to prisoner's medical needs. Estelle V. Gamble, 429 U.S.
23 97, 105, 97 S. Ct. 285 (1976). Many other courts have held that the
24 failure to carry out physician's orders in unconstitutional. see, e.g.
25 Aswegan V. Bruhl, 965 F. 2d 676, 677-78 (8th Cir.1992)(repeated
26 failures to provide medications timely); Hill V. Marshall, 962 F.2d
27 1209, 1213-14 (6th Cir 1993); Dace V. Solem, 858 F.2d 385, 387-88
28 (8th Cir.1988) failure of prison doctors to carry out surgey

1  scheduled before plaintiff's incarceration);Washington V. Dugger,
2  860 F.2d 1018, 1021 (11th cir. 1988) (failure to return patient to
3  V A Hospital for treatment for agent orange exposure); LaFaut V. Smith
4  834 F.2d 389, 393-94 (4th Cir.1987)(failure to provide rehabilitation
5  therapy recommended by orthopedic specialist).
6
7     D. The relief sought will serve the public interest.
8
9     In this case, the grant of reief will serve the public interest
10 because it is always in the public interest for prison officials to
11 obey the law Duran V. Anaya, 642 f. Supp. 510, 527 (D.N.M.1986) C'
12 Respect for law, particularly by officials responsible for the
13 administration of the state's correctional system, is in itself a
14 matter of the highest public interest."); see also Liewelyn V Oakland
15 County prosecutor's office, 402 F.Supp.1379, 1393 (E.D.Mich.1975)
16 ('the constitution is the ultimate expression of the public interest').
17
18                    POINT II
19
20 THE PLAINTIFF SHOULD NOT BE REQUIRD TO POST SECURITY.
21
22    Usually a litigant who obtains interim injunctive relief is asked
23 to post security. Rule 65 (c), Fed.R.Cir.P. However, the plain
24 plaintiff is an indigent Inmate and is unable to post security. The
25 court has discretion to excuse an impoverished litigant from posting
26 security. orantes-Hernandez V. F. Supp. 112, 140 (D.Ga.1976), rev'd
27 on other grounds, 442 U.S. 584, 99 S.Ct.2493 (1979). in view of the
28 serious medical danger confronting the plaintiff, the court should

grant the relief requested without requiring the posting of security.

CONCLUSION

For the forgoing reason, the court should grant the motion in its entirety.

Respectfully Submitted this __30__, day of __October__, 2007,

/s/ *Raynell Carmichael*
Raynell Carmichael, D-25366
San Quentin State Prison-2N-1-L
San Quentin, CA. 94974

In Propria Persona